# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



PHILIP TINSLEY, III,
Plaintiff,

v.                                          Civil Action No. 2:01cv215

FLEETBOSTON FINANCIAL CORP.,
Defendant.

ORDER AND OPINION

On March 20, 2001, the above-referenced matter was ordered transferred to the Norfolk Division of the Eastern District of Virginia from the Alexandria Division, where *pro se* Plaintiff Philip Tinsley, III originally filed it. Currently before the Court are the following motions: (1) Plaintiff's motion for default judgment; (2) Defendant FleetBoston Financial Corporation's ("FleetBoston") motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6); and (3) FleetBoston's motion for sanctions.[1] Each of these motions is addressed below.

I.    Factual and Procedural Background

This case is related to a suit Mr. Tinsley filed against Quick & Reilly, Inc. ("Q&R") on or about April 25, 2000 (the "Quick & Reilly Suit").[2] In the Quick & Reilly Suit, Plaintiff alleged that unauthorized trades of Dell Computer Corporation stock had been made on an account that he and his grandmother, Harryette Hewin Bell, held with the brokerage firm Q&R. Plaintiff

---

[1] Also on the docket is Plaintiff's motion to disqualify Judge Hilton. Dkt. No. 11. Since this case has been transferred to the Norfolk Division, Plaintiff's motion to disqualify is **DENIED** as moot.

[2] Tinsley v. Quick & Reilly, Inc., 2:00cv291 (E.D.Va.).

#16

claimed violations of the Securities Exchange Act of 1934 (the "1934 Act"), the Investment Company Act of 1940 ("ICA"), and the federal criminal mail fraud statute. On June 26, 2000, Plaintiff filed a "motion for judgment" claiming that Q&R had failed to file an answer to his complaint and that, accordingly, entry of a default judgment in his favor was warranted. Because Q&R had filed a timely motion to compel arbitration or to dismiss in lieu of filing an answer, in accordance with Rule 12(a)(4), the Court denied Plaintiff's motion for default judgment.

On August 11, 2000, the Court enforced the arbitration clause contained in the Margin and Short Account Application that Mr. Tinsley and Ms. Bell executed in order to open their Q&R account. Accordingly, all proceedings in the Quick & Reilly Suit were stayed pending arbitration of Plaintiff's claims against Q&R, and the parties were ordered to submit a progress report in November 2000 advising the Court of the status of the case. On February 9, 2001, the Court dismissed the Quick & Reilly Suit with prejudice pursuant to Rule 41(b) due to Plaintiff's repeated failure to comply with the Court's orders concerning arbitration and the submission of status reports.[3]

On December 27, 2000, Plaintiff filed the instant action in which he alleges that Q&R is FleetBoston's brokerage subsidiary and that FleetBoston, therefore, is liable for "all debts and transgressions" committed by Q&R. Plaintiff insists, despite the Court's order to the contrary, that Q&R defaulted in the Quick & Reilly Suit. Attached to the complaint is a September 5, 2000 letter from Mr. Tinsley to Terrance Murray, the alleged chairman and chief executive

---

[3] On February 15, 2001, six days after the dismissal of the Quick & Reilly Suit, Plaintiff filed a motion to disqualify this Judge from presiding over that case. Because the Court's jurisdiction over the Quick & Reilly Suit ended when judgment in favor of Quick & Reilly was entered on February 9, 2001, the Court never addressed Mr. Tinsley's motion to disqualify.

2

officer of FleetBoston, in which Mr. Tinsley threatened to sue FleetBoston directly unless it settled his claims against Q&R for $1,000,000 plus the value of his account as of April 13, 2000. In this letter, Mr. Tinsley stated that "[i]t is mind boggling that a company with approximately $180 billion dollars in assets and a subsidiary company of approximately $28 billion dollars in assets cannot settle a million dollar lawsuit that it has lost." Compl., Ex. C. Apparently, Mr. Murray did not respond to this letter.

Mr. Tinsley claims that FleetBoston is liable for violations related to the Q&R account under the following statutes: (1) the 1934 Act, 15 U.S.C. §§ 78k(a)(1), 78o(c)(1)(A), and 78t(a)-(b); (2) the ICA, 15 U.S.C. §§ 80a-35 and 80a-36; (3) the federal mail fraud statute, 18 U.S.C. § 1341; and (4) the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1962(a),(b), and (c). Plaintiff claims damages totaling $3,000,000. FleetBoston seeks the dismissal of each of these causes of action for failure to state a claim. In addition to its motion to dismiss and memorandum in support thereof, FleetBoston, in fulfillment of its obligations under Local Rule 7(J) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), served Plaintiff with a Notice of Roseboro Warning in which it advised Plaintiff that he was entitled to file a response and that the Court could dismiss this action on the basis of FleetBoston's motion if he failed to do so. Dkt. No. 9. Despite this warning, Mr. Tinsley filed no opposition to FleetBoston's motion to dismiss.

## II.    Discussion

### A.    Plaintiff's Motion for Judgment

Plaintiff has filed a Motion for Judgment in which he claims that he is entitled to a default judgment in this case pursuant to Rule 55 because Defendant failed to file a timely response

following service of the complaint. Plaintiff claims that FleetBoston was served with a copy of the complaint as well as a request for waiver of service on January 2, 2001. On February 1, 2001, FleetBoston filed its waiver of service form within the 30-day time limit under Rule 4(d)(2)(F). On February 26, 2001, FleetBoston filed timely responsive pleadings in the form of motions to transfer and to dismiss. Accordingly, Plaintiff's Motion for Judgment is baseless and must be denied.

**B.    Defendant's Motion to Dismiss**

A complaint should not be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 325 (4th Cir. 2001). At the motion to dismiss stage in litigation, all well-pleaded factual allegations are assumed to be true and are viewed in the light most favorable to the plaintiff. Advanced Health Care Serv. v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Motions to dismiss for failure to state a claim are granted "sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits." 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE, Civil 2d § 1349 at 192-93 (1990).

As the Fourth Circuit recently emphasized, "Rule 12(b)(6), however, is not without meaning." Migdal, 248 F.3d at 326. "The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." Id., quoting Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001). "This requirement serves to prevent costly discovery on claims with no

4

underlying factual or legal basis." Migdal, 248 F.3d at 326.

As an initial matter, the Court notes that, despite receiving the required Roseboro notice, Mr. Tinsley failed to file a response to FleetBoston's motion to dismiss. On this basis, the Court could construe the issues raised in FleetBoston's motion to dismiss as conceded by the Plaintiff and dismiss the instant action. The Court, however, has conducted the following analysis of the merits of FleetBoston's motion to dismiss.

### 1. Violations of the 1934 Act

In his complaint, Plaintiff alleges that Q&R made an unauthorized purchase of Intel Corporation stock on behalf of Mr. Tinsley's and Ms. Bell's account. Plaintiff further alleges that it was illegal for Q&R to purchase the Intel stock pursuant to an exercise of broker investment discretion because the account is not discretionary within the meaning of 15 U.S.C. § 78c(a)(35).[4] Plaintiff alleges that Q&R's unauthorized purchase of shares of Intel stock for his account violated 15 U.S.C. §§ 78k(a)(1) and 78o(c)(1)(A). He seeks to hold FleetBoston liable as a "controlling person" for these violations pursuant to Section 20(a) and (b) of the 1934 Act, 15 U.S.C. § 78t(a), (b).

Subsections (a) and (b) of Section 20, regarding "controlling person" liability, provide as

---

[4] The definitions section of the Securities Exchange Act of 1934 provides that: "A person exercises 'investment discretion' with respect to an account if, directly or indirectly, such person (A) is authorized to determine what securities or other property shall be purchased or sold by or for the account, (B) makes decisions as to what securities or other property shall be purchased or sold by or for the account even though some other person may have responsibility for such investment decisions, or (C) otherwise exercises such influence with respect to the purchase and sale of securities or other property by or for the account as the Commission, by rule, determines, in the public interest or for the protection of investors, should be subject to the operation of the provisions of this chapter and the rules and regulations thereunder." 15 U.S.C. § 78c(a)(35).

follows:

> **(a) Joint and several liability; good faith defense**
>
> Every person who, directly or indirectly, controls any person liable under any provision of this subchapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
>
> **(b) Unlawful activity through or by means of any other person**
>
> It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.

15 U.S.C. §§ 78t(a), (b). Section "20(a) assigns secondary liability only upon a demonstration of a primary violation by the controlled person and of direct or indirect control by the controlling person." In re E.Spire Communications, Inc. Sec. Litig., 127 F. Supp.2d 734, 750 (D. Md. 2001). Similarly, although reported cases discussing Section 20(b) are more rare, "it is clear that the section requires a showing that a 'controlling person knowingly used the controlled person to commit the illegal act.'" Cohen v. Citibank, N.A., 954 F. Supp. 621, 630 (S.D.N.Y. 1996), quoting Moss v. Morgan Stanley, 553 F. Supp. 1347, 1362 (S.D.N.Y. 1983). Thus, to prevail under either Section 20(a) or 20(b), a plaintiff must establish (1) the existence of a primary violation of the securities laws, and (2) that the defendant possessed "the potential power to influence and direct the activities of the primary violator." Id. Plaintiff fails to state a claim of secondary liability against FleetBoston for securities fraud because he does not allege a primary violation of either 15 U.S.C. § 78k(a)(1) or § 78o(c)(1)(A).

Section 11(a)(1) of the 1934 Act, 15 U.S.C. § 78k(a)(1), generally forbids a member of a national securities exchange, such as Q&R, from effecting any transaction on the exchange for its own account, the account of an associated person, or an account with respect to which it or an associated person exercises investment discretion. It does not appear that any federal court has found that a private right of action is implied under Section 11(a)(1). On the contrary, courts have specifically found that no private right of action exists under other subsections of Section 11. See Sennett v. Oppenheimer & Co., Inc., 502 F. Supp. 939, 944 (N.D. Ill. 1980) (no private right of action under Section 11(d), which restricts the extension of credit by brokers to their customers); Cutner v. Fried, 373 F. Supp. 4 (S.D.N.Y. 1974) (no private right of action against the Securities and Exchange Commission for the purpose of challenging the adequacy of rules promulgated under Section 11(b)).[5] Accordingly, it does not appear that a civil cause of action exists under Section 11(a)(1) through which Plaintiff could obtain relief.

Even assuming, however, that an implied private right of action exists under Section 11(a)(1), it is clear that the facts alleged in the complaint fail to set forth a claim under that provision. As discussed above, Section 11(a)(1) forbids brokers from effecting transactions for their own accounts or accounts in which they maintain a beneficial interest or possess investment discretion. In the instant case, Plaintiff alleges that Q&R conducted an unauthorized trade on an account owned by Mr. Tinsley and Ms. Bell, not by Q&R. Further, Plaintiff specifically alleges

---

[5] The only case the Court's research has found addressing liability under Section 11(a)(1) is an unreported decision arising from a criminal matter in which the Second Circuit upheld a floor broker's guilty plea with respect to a charge that he "unlawfully, willfully, and knowingly, effect[ed] securities transactions on the floor of the [New York Stock Exchange] for his own accounts, accounts in which he maintained a beneficial interest, and accounts in which he had investment discretion" in violation of 15 U.S.C. § 78k(a)(1). United States v. Frayler, 2000 WL 1459722 (2d Cir. Oct. 2, 2000).

7

that Q&R did not possess investment discretion with respect to the account at issue. Plaintiff makes no allegation that Q&R effected the purchase of Intel stock for an account in which it possessed an interest or investment discretion. Thus, Section 11(a)(1) is wholly inapplicable to the facts claimed by Mr. Tinsley. Plaintiff, therefore, has failed to allege a primary violation of Section 11(a)(1).

Plaintiff also purports to assert a claim under Section 15(c)(1)(A) of the 1934 Act, 15 U.S.C. § 78o(c)(1)(A). This section provides as follows:

> No broker or dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or induce or attempt to induce the purchase or sale of, any security . . . otherwise than on a national securities exchange of which it is a member by means of any manipulative, deceptive, or fraudulent device or contrivance.

15 U.S.C. § 78o(c)(1)(A). Again, however, Plaintiff has failed to allege a primary violation for which relief can be granted because it is well established that there exists no implied private right of action under Section 15(c). See, e.g., Asch v. Philips, Apfel & Walden, Inc., 867 F.2d 776, 777 (2d Cir. 1989) ("section 15(c)(1) does *not* create a private cause of action") (emphasis in original); Berner v. Lazzaro, 730 F.2d 1319, 1320 n. 1 (9th Cir. 1984) ("The district court correctly dismissed the Section 15(c) claim. No private right of action exists under this section."); Chapman v. Merrill Lynch, Pierce, Fenner, Inc., 1983 WL 1340, *4 (D.Md. July 19, 1983) (agreeing that Section 15 does not establish a private right of action).

In sum, Plaintiff's Section 20 claims against FleetBoston must be dismissed because his "failure to state a proper claim for a primary securities violation precludes a finding of control person liability." E.Spire, 127 F. Supp. 2d at 750. Plaintiff has not pled a violation of the 1934

8

Act by Q&R for which relief can be granted. Accordingly, no derivative liability can be attributed to FleetBoston.[6]

## 2. The Investment Company Act of 1940

The second cause of action asserted by Plaintiff is for violations of the ICA. Mr. Tinsley's first claim under the ICA is that "[b]y not settling the damages incurred [in the Quick & Reilly Suit] and seeing to it that the account holders received their money, FleetBoston Financial Corp. has breeched its fiduciary responsibility" in violation of Section 36 the ICA, 15 U.S.C. § 80a-35. Section 36(a) of the ICA provides, in pertinent part, as follows:

> **(a) Civil actions by Commission; jurisdiction; allegations; injunctive and other relief**
>
> The Commission is authorized to bring an action . . . alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts —
>
> (1) as officer, director, member of any advisory board, investment advisor, or depositor; . . . .

15 U.S.C. § 80a-35. "Courts have long held that a private litigant may commence an action

---

[6] Although FleetBoston has not raised the defense in its motion to dismiss, the Court notes that there may have been an issue as to whether Mr. Tinsley's secondary claims against FleetBoston are subject to the doctrine of collateral estoppel based upon the Court's earlier rulings in the Quick & Reilly Suit. In that case, the Court held that Mr. Tinsley's claims against Q&R related to alleged unauthorized trades on his and his grandmother's account are subject to mandatory arbitration. Thus, an argument could be made that the alleged unauthorized trades at issue in the instant matter must also be submitted for arbitration in accordance with the arbitration clause contained in the agreement between Q&R and Plaintiff. The Court, however, does not address this issue because it was not raised by the Defendant and its resolution is not necessary for the disposition of this matter.

under Section 36(a) of the ICA, though the section expressly refers only to SEC enforcement." Strougo v. Scudder, Stevens & Clark, Inc., 964 F. Supp. 783, 796 (S.D.N.Y. 1997).

Standing for such private suits under the ICA, however, is limited to persons who are shareholders in the defendant investment company. See, e.g., Dandorph v. Fahnstock & Co., 462 F. Supp. 961 (D. Conn. 1979). In the instant case, Plaintiff alleges that FleetBoston is an "investment company" within the meaning of Section 36(a). Plaintiff does not allege, however, that he is a FleetBoston shareholder. The only alleged relationship between Mr. Tinsley and FleetBoston is that he and his grandmother held a brokerage account with Q&R, a subsidiary of FleetBoston. Thus, Plaintiff has failed to plead any facts indicating that they possess standing to bring suit against FleetBoston under Section 36(b) of the ICA for alleged breach of fiduciary duties.

Moreover, assuming *arguendo* that FleetBoston in fact did owe Plaintiff a fiduciary duty, his allegation that FleetBoston somehow breached that duty by failing to settle the Quick & Reilly Suit is completely baseless. As discussed above, the Court ordered that the Quick & Reilly Suit be arbitrated in accordance with the agreement between Mr. Tinsley and Q&R. Plaintiff refused to participate in the arbitration of his claims, despite repeated attempts by counsel for Q&R to contact Plaintiff about going forward with the arbitration. After a warning from the Court concerning his recalcitrance, Mr. Tinsley's claims against Q&R were dismissed with prejudice. No breach of fiduciary duty follows from FleetBoston's decision not to respond to Mr. Tinsley's demand that the Q&R Suit be settled where no liability had been established in that case and it was ultimately dismissed.

Plaintiff's second claim against FleetBoston under the ICA is for larceny and

embezzlement pursuant to Section 37 of the ICA, 15 U.S.C. § 80a-36. This section provides that

> Whoever steals, unlawfully abstracts, unlawfully and willfully converts to his own use or to the use of another, or embezzles any of the money, funds, securities, credits, property, or assets of any registered investment company shall be deemed guilty of a crime, and upon conviction shall be subject to the penalties provided in section 80a-48 of this title.

15 U.S.C. § 80a-36. "Although the [ICA] does not explicitly confer a private remedy for a violation of section 37, the great weight of authority demonstrates that a private right of action must be implied." Brown v. Bullock, 194 F. Supp. 207, 223, aff'd 294 F.2d 415 (1961).

Plaintiff alleges that FleetBoston's brokerage division, Q&R, violated Section 37 by making an unauthorized trade on the margin for shares of Intel on behalf of Mr. Tinsley's account. This allegation does not involve the embezzlement or theft of property or securities owned by FleetBoston, which is the alleged investment company in this matter. Rather, Plaintiff claims that it was his money that was stolen by Q&R via the unauthorized trade. Accordingly, Plaintiff does not state a claim under Section 37.

### 3. Mail Fraud

Plaintiff also alleges that FleetBoston and its alleged chief executive officer committed mail fraud by ignoring the September 5, 2000 letter that Plaintiff mailed to Mr. Murray in which Plaintiff demanded that FleetBoston settle the Quick & Reilly Suit for $1,000,000. This claim fails because "[u]nless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute." Tribble v. Reedy, 1989 WL 126783 (4th Cir. Nov. 24, 1989). Section 1341 "is a 'bare criminal statute' which gives no express indication of Congressional intent to create a civil remedy." Id.; Ryan v. Ohio

11

Edison Co., 611 F.2d 1170, 1178-79 (6th Cir. 1980) (no private right of action under Section 1341). Accordingly, Plaintiff's claim for relief based upon an alleged violation of the criminal mail fraud statute must be dismissed.

### 4. RICO

Finally, Plaintiff alleges that FleetBoston is liable for racketeering under the criminal RICO statute, 18 U.S.C. § 1961. Although Plaintiff refers only to RICO's criminal provision, RICO provides for civil remedies, including treble damages, attorneys' fees, and costs, based upon proof that Plaintiff was "injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). To state a claim that Defendant has violated Section 1962, Plaintiff must allege the existence of seven constituent elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate commerce." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983);18 U.S.C. § 1962(a)-(c). RICO defines "pattern of racketeering activity" as at least two acts of "racketeering activity" occurring within ten years of each other. 18 U.S.C. 1961(5). In turn, "racketeering activity" is defined to include, *inter alia*, "fraud in the sale of securities." 18 U.S.C. § 1961(1)(D).

Plaintiff has failed to set forth any facts whatsoever indicating that FleetBoston has engaged in "racketeering activity" in violation Section 1962. Plaintiff maintains that FleetBoston's conduct related to (1) Q&R's alleged unauthorized purchase of Intel stock on behalf of Plaintiff's account, (2) the claims made in the Quick & Reilly Suit, and (3) the alleged mail fraud associated with not responding to Plaintiff's demand letter is sufficient to establish a

"pattern of racketeering activity." It is not. First, there is no basis offered in the complaint from which the Court could even infer that any fraud on the part of FleetBoston was involved in the trades at issue. Plaintiff baldly asserts that he did not authorize Q&R to purchase Dell and Intel stock for his account. From that Plaintiff makes, and expects the Court to make, the enormous and unsubstantiated leap that this allegedly unauthorized trade was in furtherance of some scheme by FleetBoston to defraud him. FleetBoston is not alleged to be a broker and there is absolutely no indication that any employee of FleetBoston was aware of those alleged trades. Plaintiff couples these unauthorized trade allegations with his allegation of reverse mail fraud – *i.e.*, that FleetBoston somehow committed mail fraud by not responding to a mailing sent by the Plaintiff – to arrive at a RICO charge. Simply put, Plaintiff has alleged no predicate acts, let alone a "pattern of racketeering activity," on the part of FleetBoston sufficient to support a claim under RICO. Accordingly, Plaintiff's civil RICO claim must be dismissed.

### C.    Defendant's Motion for Sanctions

FleetBoston has filed a motion pursuant to Rule 11 requesting that the Court enter the following sanctions against Mr. Tinsley: (1) a monetary penalty; (2) a prohibition barring Plaintiff from initiating any further litigation in federal court without the leave of court; and (3) an award to FleetBoston of its costs, expenses, and attorneys' fees incurred in relation to the defense of this suit. FleetBoston claims that such sanctions are warranted because Plaintiff allegedly filed this action with the improper motive of harassing FleetBoston and because of his poor treatment of FleetBoston's counsel. For instance, attached to Defendant's motion for sanctions are two letters signed by Mr. Tinsley. The first letter, dated July 13, 2000, insults counsel by calling her "incompetent," accuses her of mail fraud, obstruction of justice, and

13

racketeering in connection with the Quick & Reilly Suit, and threatens to file a federal lawsuit against her and her firm Kaufman & Canoles. The second letter is dated February 1, 2001 and is directed to a United States Postal Inspector. This letter refers to counsel as a felon and demands that Kaufman & Canoles be barred from using the United States postal system. Mr. Tinsley apparently faxed copies of one or both of these letters to the Virginia Supreme Court and to attorneys in the Norfolk region.

"Deterrence and prevention of litigation abuse are key policies underlying Rule 11 sanctions." Armstrong v. Koury Corp., 16 F. Supp.2d 616, 619 (M.D.N.C. 1998), aff'd 168 F.3d 481 (4th Cir. 1999).[7] "Courts have the authority to protect defendants from the harassment of frivolous and vexatious lawsuits, and to protect themselves from having to process frivolous and repetitive papers." Id., at 620, citing Pavilonis v. King, 626 F.2d 1075, 1078 (1st Cir. 1980).

---

[7] Rule 11, in pertinent part, provides as follows:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney *or an unrepresented party* is certifying that to the best of the person's knowledge, information, and belief, formed after inquiry reasonable under the circumstances, –

(1) it is not being filed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are unwarranted by existing law or by a nonfrivolous argument for extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support . . . .

Fed. R. Civ. P. 11(b) (emphasis added).

Additionally, "[t]he All Writs Act, 28 U.S.C. § 1651(a), authorizes district courts to restrict access to federal courts of parties who repeatedly file frivolous litigation." Armstrong, 16 F. Supp.2d at 620. "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir. 1984). See also In re Brunley, 988 F.2d 1, 3 (4th Cir. 1992) (recognizing that it is "well established law in this circuit" that district courts have the authority to impose a pre-filing review system on frequent filers of frivolous complaints). "There are no exceptions for pro se litigants." Armstrong, 16 F. Supp.2d at 620.

Over the past several years, Mr. Tinsley has brought no fewer than twelve suits in the Eastern District of Virginia, nine of which have been dismissed pursuant to Rule 12, one dismissed pursuant to Rule 4(m), one remanded to state court following a frivolous removal, and one, filed in February 2001, is still pending.[8] The cases filed by Mr. Tinsley over which this Judge has presided have all involved outlandish and unmeritorious claims similar to those presented in the instant matter. Further, Mr. Tinsley has a history of using harsh and abusive

---

[8] In addition to the instant matter, these cases are: Tinsley v. Senate Comm. on Armed Services, 1:99cv951 (J. Bryan) (dismissed with prejudice October 1, 1999); Tinsley v. U.S. Senate Comm. on the Judiciary, 1:99cv952 (J. Bryan) (dismissed with prejudice October 1, 1999); Tinsley v. Spitzer, 1:99cv1342 (J. Hilton) (dismissed pursuant to Rule 4(m) on February 16, 2000); Tinsley v. Jones, 1:99cv1822 (J. Hilton) (dismissed January 18, 2000); Tinsley v. Quick & Reilly, Inc., 2:00cv291 (J. Friedman) (dismissed with prejudice February 9, 2001); Hospital Authority v. Bell, 2:00cv327 (J. Friedman) (remanded July 13, 2000); Tinsley v. Martin, 2:00cv360 (J. Friedman) (dismissed July 18, 2000); Bell v. Bank of America, 2:00cv880 (J. Morgan) (dismissed with prejudice July 11, 2001); Tinsley v. Metropolitan Life, 3:00cv56 (J. Payne) (dismissed without prejudice March 16, 2000); Tinsley v. Department of Motor Vehicles, 3:00cv670 (J. Williams) (dismissed with prejudice February 15, 2001); and Tinsley v. Fairfax County Police, 1:01cv279 (filed February 21, 2001, pending).

language directed not only at opposing parties and their counsel, but at the Court and the clerks of this Court.

For these reasons, the Court finds that it is appropriate to sanction Mr. Tinsley. The Court, however, at this time shall not impose a monetary sanction or award attorneys' fees or costs to the Defendant in this case out of a concern for Mr. Tinsley's financial situation. In particular, the Court is aware that Mr. Tinsley apparently cares for his elderly grandmother. Accordingly, the Court has designed a remedy, set forth below in the conclusion to this Order and Opinion, that is intended to end Plaintiff's litigiousness and to protect the Court and opposing parties from his contumelies, while affording Plaintiff the opportunity for legitimate litigation.

### III. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss hereby is **GRANTED**. Accordingly, Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. Plaintiffs' Motion for Judgment is **DENIED**. Defendant's Motion for Sanctions is **GRANTED**.

To protect the courts, this Defendant, and any past and potential defendants from the harassment of frivolous and vexatious litigation initiated by Plaintiff, the Court hereby **ORDERS** the following injunctions:

(1) Plaintiff, or anyone acting on his behalf, is enjoined from filing any new action or proceeding in any federal court without first obtaining the leave of that court; and

(2) Plaintiff is enjoined from filing any further papers in any matter pending in the Eastern District of Virginia without first obtaining leave of court.

Leave of court shall be forthcoming upon Plaintiff's demonstration through a properly

filed motion that the proposed filing (1) can survive a challenge under Rule 12, (2) is not barred by the principles of issue or claim preclusion, (3) is not repetitive or in violation of a court order, and (4) is in compliance with Rule 11. The injunction imposed by this Order shall not apply to the filing of timely notices of appeal to the Court of Appeals and papers filed solely in furtherance of such appeals.

The Clerk of this Court hereby is **ORDERED** to refuse to accept any submissions for filing from Plaintiff except for petitions for leave of court, unless such filings are accompanied by a court order granting leave. In the event that Plaintiff succeeds in filing papers in violation of this Order, upon notice of such filing, the Clerk shall immediately and summarily strike the pleading or filing.

The Clerk of the Norfolk Division is **REQUESTED** to send copies of this Order and Opinion to the *pro se* Plaintiff, to counsel for the Defendant, and to the clerks in the other Divisions within the Eastern District of Virginia.

Plaintiff is **ADVISED** that they may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, 600 Granby Street, Norfolk, Virginia 23510. This written notice of appeal must be received within thirty (30) days from the date of this order.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

July 17, 2001
Norfolk, Virginia

7-17-01 Copies mailed to plaintiff +
to counsel for defendant +
7-19-01 - Copies to divisional offices. 17